UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED CAPITAL FUNDING CORP., <br><br> Plaintiff, <br><br> v. <br><br> ERICSSON, INC., <br><br> Defendant. | CASE NO. C15-0194JLR <br><br> ORDER DENYING MOTION TO DISMISS |
| ERICSSON, INC., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> KYKO GLOBAL, INC., <br><br> Third-Party Defendant. | |

//

//

ORDER - 1

## I. INTRODUCTION

Before the court is Defendant and Third-Party Plaintiff Ericsson, Inc.'s ("Ericsson") motion to dismiss Plaintiff United Capital Funding Corp.'s ("United") Uniform Commercial Code ("UCC") § 9-406 claim. (MTD (Dkt. # 140).) United opposes the motion. (Resp. (Dkt. # 141).) The court has considered the motion, the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES the motion.[2]

## II. BACKGROUND

This case concerns four businesses: United, Ericsson, Third-Party Defendant Kyko Global, Inc. ("Kyko"), and non-party Prithvi Solutions, Inc. ("Prithvi"). (*See* MTD; Resp.) The dispute centers on the legitimacy of assignments that Prithvi made to United. (*See* Compl. (Dkt. # 1).) The court details the factual background of this case before turning to the procedural background.

//

//

//

//

---

[1] United requests oral argument (*see* Resp. at 1), but the court finds that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] United additionally filed a surreply in which it asks the court to strike "a new argument and new case references never raised in Ericsson's initial Motion to Dismiss." (Surreply (Dkt. # 144) at 2.) The court finds that the challenged portions of Ericsson's reply do not alter the court's determination. *See infra* § III. Accordingly, the court denies United's request as moot.

## A. Factual Background

United is in the business of "factoring"—purchasing accounts receivable from other entities. (Compl. (Dkt. # 1) ¶ 7.) On September 27, 2010, United purchased some of Prithvi's accounts, including accounts receivable Prithvi had with Ericsson. (*Id.* ¶¶ 10, 12.) Specifically, United purchased, among others, 22 invoices totaling $184,539.50. (*Id.* ¶ 12.) Pursuant to that purchase, United sent a letter to Ericsson "giving notice that Prithvi's present and future [a]ccounts had been assigned to United, and providing that all present and future payments owing to Prithvi should instead be paid by Ericsson to and only to United." (*Id.* ¶ 11; *see also id.*, Ex. 1 (Dkt. # 1-1) ("Notice Letter") at 1 ("[Prithvi has] assigned [its] present and future Accounts Receivable to [United]. . . . Payments should be made payable to [United]. Payment to any other party will not discharge this obligation.").)

Ericsson did not pay United any of the amounts due on the 22 outstanding invoices. (Compl. ¶ 15.) Instead, Ericsson paid another creditor, Kyko, in satisfaction of a writ of garnishment Kyko obtained on June 14, 2014, in state court. (12/15/15 Order (Dkt. # 98) at 3; 4/26/18 Order (Dkt. # 118) at 2; 9th Cir. Order (Dkt. # 133) at 3.)

## B. Procedural Background

In November 2014, United brought suit against Ericsson for $184,539.50 in unpaid payments that United claims it is owed under the assignment from Prithvi. (*See* Compl.) United asserts that Ericsson "failed to fulfill its obligation to make payment to United under the terms of the invoices and as statutorily required by [§] 9-406 of the UCC." (*Id.* ¶ 17.) United alleges that "its claim against Ericsson is for damages that

have arisen in connection with an oral or written agreement between Ericsson and its vendor, Prithvi, the rights to which now lie with United." (*Id.* ¶ 18.) United sues Ericsson for "breach of Ericsson's [s]tatutory [d]uty to [p]ay United." (*Id.* at 1.)

On December 15, 2015, the Honorable John C. Coughenour granted summary judgment to Ericsson and dismissed United's claim.[3] (*See* 12/15/15 Order.) Specifically, the court agreed with Ericsson that Prithvi's assignments to United were invalid and that Ericsson is immune from suit as a garnishee who paid in accordance with a court judgment; both grounds entitled Ericsson to summary judgment. (*Id.* at 5-7.) United appealed. (Not. of Appeal (Dkt. # 123).)

The Ninth Circuit Court of Appeals reversed the grants of summary judgment and remanded the matter. (*See* 9th Cir. Order.) The Ninth Circuit found that there was a genuine dispute of material fact regarding whether the assignment was invalid and that Ericsson was not entitled to immunity. (*Id.* at 5-7.) The Ninth Circuit further declined to address Ericsson's argument, raised for the first time on appeal, that UCC § 9-406 does not create a private right of action for assignees. (*Id.* at 6 n.3.) The court explained that it "will not address this contention as Ericsson failed to raise it below and, thus, did not adequately preserve it." (*Id.*)

Upon remand, Judge Coughenour recused himself, and this matter was reassigned to the undersigned judge. (*See* Min. Order (Dkt. # 135).) Ericsson subsequently filed the

//

---

[3] The court also granted Ericsson summary judgment on its counterclaim against United. (*See* 4/26/18 Order.) The instant motion does not involve that counterclaim. (*See generally* MTD.)

instant motion to dismiss pursuant to Rule 12(b)(6), raising the argument that the Ninth Circuit declined to address: whether UCC § 9-406 provides United a private cause of action to bring its claim against Ericsson. (*See* MTD; *see also* Jt. Statement (Dkt. # 138) (notifying the court after remand that Ericsson intended to file a motion to dismiss).) The court now addresses the motion.

### III.   ANALYSIS

#### A.   Legal Standard

Dismissal for failure to state a claim "is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility requirement "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" liability for the alleged misconduct. *Twombly*, 550 U.S. at 556.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "Mere conclusory statements" or "formulaic recitation[s] of the elements of a cause of action," however, "are not entitled to the presumption of truth." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citing *Twombly*, 550 U.S. at 555).

The Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for [an] imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, --- U.S. ---, 135 S. Ct. 346, 346 (2014) (per curiam). Thus, "[a] claim should not be dismissed on the basis of a technicality when the claim's factual allegations are sufficient to demonstrate the plaintiff is entitled to relief." *MacNeill v. The Benefits Plan of the Presbyterian Church (U.S.A.)*, 189 F. Supp. 3d 1080, 1082 (W.D. Wash. 2016). That is, a plaintiff's "failure to state the correct legal theory should not preclude [it] from litigating a potentially meritorious claim if that claim is factually supported." *Id.* If the complaint's sole error is "mischaracterizing a viable theory of liability, then dismissal is not warranted." *Durham Commercial Capital Corp. v. Select Portfolio Serv., Inc.*, No. 3:14-cv-877-J-34PDB, 2018 WL 2017531, at *4 (M.D. Fla. May 1, 2018).

**B.     Motion to Dismiss**

Ericsson argues that UCC § 9-406 does not provide a private cause of action for assignees such as United. (*See* MTD at 4-7.) And because Ericsson reads United's

//

complaint as asserting only a UCC § 9-406 claim (Reply at 4), Ericsson maintains that United's claim must be dismissed (*see* MTD at 4-7; Reply at 4-8).

The question of whether UCC § 9-406 provides a private cause of action is a matter of first impression. Neither party cites any appellate or district court precedent in the Ninth Circuit on the issue. (*See* MTD; Resp.; Reply.) UCC § 9-406, which has been adopted by Washington as RCW 62A.9A-406, states in relevant part:

> [A]n account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor.

RCW 62A.9A-406(a); U.C.C. § 9-406. Here, United (the assignee) purchased accounts from Prithvi (the assignor), such that Ericsson (the account debtor) could only discharge its obligation by paying United. *See id.* Courts have historically allowed the purchaser of accounts to bring suit when they have not received payment from the account debtor. *See, e.g., Allstate Fin. Corp. v. Dundee Mills, Inc.*, 800 F.2d 1073, 1074-75 (11th Cir. 1986) (deciding that a UCC suit brought by an assignee to collect on 15 invoices that the account debtor wrongfully paid to the assignor or third parties).

In 2016, however, the Fourth Circuit held, in an unpublished opinion, that "there is no private right of action for transfers made 'in violation of [section 9-406] . . . of the UCC." 658 F. App'x 675, 682 (4th Cir. 2016). In interpreting Maryland's version of UCC § 9-406, the Fourth Circuit observed that the provision "imposes no obligations on the account debtor; whatever 'obligation' the account debtor may have is assumed to

exist already." *Id.* at 680. Thus, the court concluded that the provision "simply explain[ed] how to satisfy that obligation." *Id.* Moreover, the court found no evidence that the Maryland legislature intended to confer a private right of action through § 9-406. *Id.* at 680-81. And significantly, the court was concerned that creating an independent cause of action under UCC § 9-406, without an underlying assignment, would "creat[e] rights out of nothing . . . and submit[] account debtors to obligations they never agreed to take on." *Id.* at 681 (relying on a case where the assignee attempted to recover payments on invoices that it had not been assigned).

Post-*Forest Capital*, district courts have split on whether to adopt *Forest Capital*'s reasoning. In *Integrity Factoring & Consulting, Inc. v. Triple S Materials, L.P.*, the Western District of Texas found "the Fourth Circuit's analysis instructive." No. 5:16-CV-885-DAE, 2017 WL 8020218, at *4 (W.D. Tex. Nov. 20, 2017). The court noted that "Texas applies a rule of strict construction to statutory enforcement" and "only implies a cause of action when the legislative intent is clearly expressed." *Id.* Because the legislative intent behind Texas and Business Commercial Code § 9.406[4] did not "clearly express an implied cause of action," and because the commentary supporting § 9.406 "make no mention of remedies parties may pursue," the court concluded that § 9.406 did not provide a cause of action. *Id.* at *5.

In contrast, the Southern District of Florida in *Durham Commercial Capital Corp. v. Ocwen Loan Servicing, LLC* declined to adopt *Forest Capital*'s reasoning.

---

[4] Section 9.406 is identical to both UCC § 9-406 and RCW 62A.9A-406. *See Integrity Factoring*, 2017 WL 8020218, at *5.

ORDER - 8

No. 15-80200-CIV-MARRA/MATHEWMAN, 2017 WL 5643300, at *1-2 (S.D. Fla. Aug. 24, 2017). The court recognized that *Forest Capital* analyzed Maryland law, whereas the court had to determine whether New York's UCC provision allows for a private right of action. *Id.* at *1. New York's UCC § 1-305 stated that the "remedies provided by this act must be liberally administered" and that "[a]ny right or obligation declared by this act is enforceable by action unless the provision declaring it specifies a different and limited effect." *Id.* at *1 (quoting N.Y.U.C.C. § 1-305). Accordingly, the court observed, New York courts have allowed an aggrieved assignee to bring suit. *Id.* at *1-2 (citing cases where courts allowed damages for a claim brought pursuant to the UCC). Although the court acknowledged that none of those cases concerned whether a private right of action exists under § 9-406, the fact that various other courts permitted a cause of action pursuant to § 9-406 led the court to decline to extend *Forest Capital*, a case that the court qualified as "a non-controlling, unpersuasive decision contrary to New York caselaw." *Id.* at *2.

The court finds the reasoning of *Ocwen Loan Servicing* persuasive. The court observes that *Forest Capital* analyzed whether "the Court of Appeals of Maryland would recognize" the right of a secured party to sue an account debtor after receiving notice of the assignment. 658 F. App'x at 681. This court, however, must look to Washington law. Washington courts have recognized that under the UCC, an account debtor who receives proper notice is obligated to pay the assignee. *See Prime Constr. Co., Inc. v. Seattle-First Nat'l Bank*, 558 P.2d 274, 276 (Wash. Ct. App. 1977); *see also Nw. Bus. Fin., LLC v. Able Contractor, Inc.*, 383 P.3d 1074, 1078-79 (Wash. Ct. App. 2016). And

like New York law, Washington's version of the UCC provides a cause of action to enforce any obligation the statute creates. RCW 62A.1-305, entitled "Remedies to be liberally administered" states:

> (a) The remedies provided by this title must be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special damages nor penal damages may be had except as specifically provided in this title or by other rule of law.
>
> (b) Any right or obligation declared by this title is enforceable by action unless the provision declaring it specifies a different and limited effect.

RCW 62A.1-305. The commentary accompanying this provision expounds that "any right or obligation described in the [UCC] is enforceable by action, even though no remedy may be expressly provided."[5] *Id.*, cmt. 2. The obligation imposed by § 9-406 on the account debtor to pay the assignee—paired with § 1-305's provision that every obligation is enforceable by action—is strong evidence that Washington's UCC allows for a private cause of action.[6]

And although not many Washington courts have not analyzed § 9-406, the limited case law suggests that Washington courts permit a private cause of action. *Northwest Business Finance, LLC v. Able Contractor, Inc.* featured analogous facts. *See* 383 P.3d at

---

[5] Ericsson claims that § 1-305 does not apply because the provision "specifies a different and limited effect." (Reply at 12-13.) But Ericsson then refers to RCW 62A.9A-404(a)(1) and not RCW 62A.9A-406. (*See id.* at 13.) The court does not find that RCW 62A.9A-406 contains a "different and limited effect" and thus rejects Ericsson's argument.

[6] Unlike Texas law that requires an implied cause of action must be "clearly expressed," *Integrity Factoring & Consulting*, 2017 WL 8020218, at *4, Washington courts "assume that the legislature is aware of the doctrine of implied statutory causes of action," *Bennett v. Hardy*, 784 P.2d 1258, 1261 (Wash. 1990). Indeed, Washington courts recognize that often, "[w]ithout an implicit creation of a remedy, the statute is meaningless." *Id.*

1076-77. In that case, Northwest (the assignee) purchased accounts from Able Contractors (the assignor), such that Western (the account debtor) would pay some of its invoices to Northwest rather than to Able Contractors. *Id.* at 1076. In determining whether account debtor Western was required to pay certain invoices to assignee Northwest, the court determined that § 9-406 was "[p]rimarily at issue." *Id.* at 1078. After analyzing the provision, the court held that "[o]nce notified of the assignment, account debtors . . . must pay the assignee." *Id.* at 1078-79. This interpretation of § 9-406, which imposes an obligation on the account debtor, combined with the fact that the court adjudicated the claim, indicates that Washington's UCC permits a private cause of action.[7]

Indeed, allowing a cause of action under § 9-406 comports with the practices of courts nationwide. Courts around the country have permitted claims brought under § 9-406. *See, e.g., Greenfield Commercial Credit, L.L.C. v. Catlettsburg Refining, L.L.C.*, No. 03-3391, 2007 WL 97068, at *3 (E.D. La. Jan. 9, 2007) (considering a § 9-406 claim and stating that "it is well established that an account debtor who fails to comply with a valid assignment and improperly pays the assignor may be liable to the assignee for the amount of the improper payment"); *Rosemount Global Trade Fin. Fund, L.P. v. AJC Int'l, Inc.*, No. 1:11-CV-112-AT, 2011 WL 13217820, at *4 (N.D. Ga. Oct.

---

[7] Ericsson attempts to distinguish *Northwest Business Finance* because the court there ultimately decided in favor of the account debtor. (*See* Reply at 6.) This argument misses the mark. With whom the court ultimately sided in *Northwest Business Finance* is irrelevant to whether a cause of action exists under § 9-406. Instead, the court's proclamation of the account debtor's obligation under § 9-406, as well as the fact that the court heard the claim, sheds light on how Washington courts would interpret this question.

ORDER - 11

25, 2011) (declining to dismiss a claim brought under § 9-406). Against this backdrop, Washington's statutory language and Washington courts' interpretation of that language distinguish the present case from *Forest Capital*.[8]

But even if Ericsson is correct that UCC § 9-406 provides no cause of action, that fact alone does not warrant dismissal of United's claim. The court in *Durham Commercial Capital Corp. v. Select Portfolio Servicing, Inc.* faced a similar situation. There, the account debtor, like Ericsson, sought dismissal based upon *Forest Capital*. 2018 WL 2017531, at *3. The assignee had alleged that (1) it purchased certain accounts from the assignor; (2) it notified the account debtor of the assignment and informed the account debtor that all existing and future invoices should be paid to the assignee; and (3) despite the notice, the account debtor did not pay the assignee. *Id.* at *4. The court determined that these allegations undoubtedly were "sufficient to state a viable theory of recovery, well-recognized not only in [the state], but across the country." *Id.* at *5. Because the assignee was bringing a viable claim, the fact that the assignee relied on § 9-406 as perhaps an improper vehicle to bring that claim "is merely an imperfect statement of the legal theory supporting its claim." *Id.* at *7. Dismissal is thus not warranted. *Id.*

*Forest Capital* does not "break with the ample authority that a claim to collect on accounts, the right to payment on which has been legally assigned, is a viable claim." *Id.*

//

---

[8] Not only is *Forest Capital* an out-of-circuit case that is not binding on this court, but the court further observes that because *Forest Capital* is an unpublished opinion, it does not constitute binding precedent even within the Fourth Circuit. *See* 658 F. App'x at 676.

(citing *Forest Capital*, 658 F. App'x at 681). Indeed, *Select Portfolio Servicing* pointed out that *Forest Capital*'s cited case law concerned a situation where the right to receive payment on particular invoices had "never actually been assigned" to the assignee. *Id.* at *6; *see id.* at *7. In that scenario, when there is no viable claim, § 9-406 does not proffer a stand-alone cause of action. *See id.* But when the factual allegations "demonstrate the existence of an underlying payment obligation," the fact that § 9-406 was incorrectly pinpointed as the cause of action is insufficient for dismissal. *Id.* at *7.

*Select Portfolio Servicing* is instructive here. United presents the same allegations as the assignee there: (1) United purchased certain accounts from Prithvi (Compl. ¶ 10); (2) United notified Ericsson of the assignment and informed Ericsson that certain invoices needed to be paid to United (*id.* ¶ 11-12; *see* Notice Letter); and (3) Ericsson has not paid those invoices (Compl. ¶ 15). At this stage, the court expresses no opinion on whether the claim will ultimately be meritorious, but United's allegations support a viable claim, one that is recognized in Washington and around the country. *See Select Portfolio Serv.*, 2018 WL 2017531, at *5; *Nw. Bus. Fin.*, 383 P.3d at 1078-79. Thus, even accepting Ericsson's argument that § 9-406 does not provide a cause of action, United, like the assignee in *Select Portfolio Servicing*, simply chose "an imperfect statement of the legal theory supporting its claim." 2018 WL 2017531, at *7.

In sum, the court declines to adopt *Forest Capital*'s reasoning and concludes instead that RCW 62A.9A-406, Washington's enactment of UCC § 9-406, provides a private cause of action. But even if no private cause of action exists under § 9-406, the court finds that United's factual allegations support a viable claim that is recognized in

Washington, rendering dismissal inappropriate. Accordingly, the court denies Ericsson's motion to dismiss.

### IV. CONCLUSION

For the foregoing reasons, the court DENIES Ericsson's motion to dismiss (Dkt. # 140).

Dated this 30th day of July, 2018.

JAMES L. ROBART
United States District Judge